Chartier v. Social Security          CV-97-509-M    11/30/98

UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Mark Chartier,
      Claimant,

v.                                          Civil No. 97-509-M

Kenneth S. Apfel, Commissioner
Social Security Administration,
      Defendant.


                            **O R D E R**

      Pursuant to 42 U.S.C. § 405(g), claimant, Mark Chartier,

moves to reverse the Commissioner's decision denying his

application for Social Security Disability Insurance Benefits

under Title II of the Social Security Act, 42 U.S.C. § 423 (the

"Act").  Defendant objects and moves for an order affirming the

decision of the Commissioner.


                      **Factual Background**

I.    Procedural History.

      On August 4, 1994, claimant filed an application for

disability insurance benefits under Title II of the Act, alleging

that he had been unable to work since October 31, 1989 (claimant

last met the disability status requirements on December 31, 1994

– his "date last insured").  The Social Security Administration

denied his application initially and on reconsideration.  On

February 26, 1996, claimant, his attorney, and an impartial

vocational expert appeared before Administrative Law Judge Ruth

Kleinfeld, who considered claimant's application de novo.  On

July 26, 1996, the ALJ issued her order, concluding that claimant was not disabled prior to his date last insured and, therefore, was not entitled to benefits under the Act.

Claimant then sought review of the ALJ's decision by the Appeals Council. On July 25, 1997, however, the Appeals Council denied his request, thereby rendering the ALJ's decision a final decision of the Commissioner, subject to judicial review. On October 8, 1997, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. Approximately eight months later, claimant filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 6). The Commissioner objected and filed a cross "Motion for Order Affirming the Decision of the Commissioner" (document no. 7). Those motions are now pending before the court.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a lengthy statement of stipulated facts which, because it is part of the court's record (document no. 8), need not be recounted in this opinion.

2

## Standard of Review

I.   <u>Properly Supported Findings by the ALJ are Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Irlanda Ortiz v. Secretary of Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may be substantial evidence supporting the claimant's position. <u>See</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). <u>See also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

_____

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

3

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts."  Ortiz, 955 F.2d at 769.  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir.

4

1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.

Once the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520. Ultimately, a claimant is disabled only if his:

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse the decision of the Commissioner.

## Discussion

A.  Background - The ALJ's Findings.

In concluding that Mr. Chartier was not disabled within the meaning of the Act, the ALJ employed the mandatory five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.

At step 2 of the analysis, the ALJ concluded that claimant does have a severe impairment as defined in 20 C.F.R. 404.1521, which has been diagnosed as "chronic posterolateral instability of the left knee status post several arthroscopic and stabilization procedures and high tibial osteotomy." Decision of ALJ Kleinfeld, Administrative Transcript at 19. At step 3 of the analysis, however, the ALJ concluded that although claimant's impairment is severe, it does not meet or equal an impairment found in the listing at Appendix 1 to Subpart P of the Regulations. Id.

The ALJ next determined that claimant's impairment prevents him from performing his past relevant work as a maintenance mechanic (generally considered "heavy" work) or as a heating-ventilation installer, delivery truck driver, or machine operator (each of which is generally considered "medium" work). Finally, the ALJ concluded that claimant retained a residual functional capacity ("RFC") for a range of sedentary work, limited by: claimant's need to sit or stand at his option; his need to periodically elevate his leg; and a mild to moderate impairment of concentration (a side effect of claimant's pain medication). Id. at 28. Relying upon the testimony of the vocational expert, the ALJ concluded that there are:

> a significant number of unskilled sedentary jobs in the national economy that a 35 year old skilled and semi-skilled heating-ventilation-air conditioning installer/mechanic with a high school education and a residual functional capacity for a range of sedentary

7

work limited only by the need to sit and stand at his option, mild to moderate impairment of concentration secondary to pain medication side effects, and the opportunity to elevate his leg could perform.

Id. Consequently, the ALJ concluded that claimant "was not under a 'disability,' as defined in the Social Security Act prior to the expiration of his insured status on December 31, 1994." Id. at 31. In reaching that decision, the ALJ concluded that claimant's allegations of disabling pain were not credible. Id. at 27.

II. Claimant's Allegations of Error.

Among other things, claimant alleges that the ALJ misconstrued the record evidence and improperly concluded that his subjective complaints of pain were both overstated and inconsistent with the physical findings of his treating physicians. He asserts that the ALJ improperly (and without adequate foundation) discounted his complaints of pain and says that the ALJ's conclusion that he retains the RFC to perform a range of sedentary work is not supported by substantial evidence.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as his own description of his physical limitations, including his subjective complaints of pain. See Manso-Pizzarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996). When, as here, the claimant has demonstrated that he

8

suffers from an impairment that could reasonably be expected to produce the pain he alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which those symptoms limit the claimant's ability to do basic work activities. See Social Security Ruling ("SSR") 96-7p (July 2, 1996).

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by the treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual . . ..
>
> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individuals' statements.

Id.[2] Those factors include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate

---

2    Although the ALJ's opinion references SSR 95-5p, that ruling was superceded by SSR 96-7p in July of 1996. Because SSR 96-7p was in effect prior to the date of the ALJ's opinion, the court will refer to the provisions of that ruling.

9

pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms. Id. See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ concluded that claimant's "pain does not credibly interfere with his ability to perform a range of sedentary work." Transcript at 27. In support of that conclusion, the ALJ first addressed claimant's use of the prescription pain medication Percocet.

> [T]he claimant did testify that he takes the medication Percocet for pain and knee swelling on a daily basis. The claimant's complaints that he has side effects of light headedness, dizziness, decreased concentration and the need to lie down for four hours per day when on medications are not entirely credible, for if they were he would not continue to use Percocet for pain.

Transcript at 26. The ALJ's conclusion is, however, logically flawed and fails to take into consideration that claimant may simply elect to continue taking Percocet and live with its side effects, rather than endure what he described as substantial and nearly-constant pain. See, e.g., Transcript at 599 (Letter in which claimant's treating physician, Dr. Piscopo, noted that, "We see on a very regular basis patients who are hospitalized for acute injuries or recent surgeries where we trade off the side effects of various medications for the potential benefits that they provide for pain control."). Cf SSR 96-7p ("The individual may not take prescription medication because the side effects are

10

less tolerable than the symptoms." Conversely, of course, a patient may elect to endure unpleasant side effects, if they are less uncomfortable than untreated pain).

Next, the ALJ addressed claimant's subjective complaints of pain and concluded:

> The claimant testified that he is not comfortable when sitting or standing unless he has taken enough Percocet, indicating that pain medication sufficiently relieves pain to allow him to perform the sit and stand requirements of sedentary work.

Transcript at 26. Actually, claimant testified that he is not comfortable sitting or standing. Id. at 66. The pertinent portions of the colloquy between the ALJ and claimant read as follows:

> ALJ: Which is more comfortable for you, sitting or standing?
>
> Cmt: Honestly, yeah, neither. I'm not comfortable at either.
>
> ALJ: Um-hum. How about lying down on your, with you – well, lying down on, on a bed, with your leg up.
>
> Cmt: Am I comfortable?
>
> ALJ: Um-hum.
>
> Cmt: Yeah, if I'm on enough medication, yes. I take Elavil to make myself go to sleep at night. I take 70 mg.
>
> ALJ: Okay and does that help?
>
> Cmt: It helps.

11

Transcript at 66.

The ALJ also discounted claimant's testimony regarding his daily use of the cryocuff, concluding that his testimony was not credible "because the medical evidence documented in the record makes no mention of the prescribed use of this treatment modality by a treating source." Transcript at 26-27. However, claimant's progress notes from Merrimack Valley Physical Therapy reflect the fact that the cryocuff was, in fact, repeatedly used as part of claimant's overall treatment regimen. See Transcript at 238-41, 243-44.

Finally, the ALJ concluded that, "[g]iven the findings of the claimant's treating physicians that the claimant's pain complaints are not consistent with the physical findings, pain does not appear to be a credible limitation on the claimant's work capacity." Transcript at 27. It is, however, unclear which "findings of claimant's treating physicians" the ALJ is referring to. For example, Dr. Piscopo, claimant's treating physician since 1990, repeatedly references claimant's complaints of pain throughout his progress notes, see, e.g., Transcript at 488, 492-93, 497, 502, 505, 508, 510, 538-39, but does not appear to question the credibility of claimant's complaints. The Commissioner has not identified (and the court has not located) any parts of the administrative record in which claimant's treating physicians opined (or even suggested) that his

12

complaints of pain were inconsistent with his physical

condition.[3]


The ALJ also failed to discuss why she apparently discounted

the opinion of Dr. Piscopo (a "treating source," as defined in 20

C.F.R. § 404.1527(d)(2), who's opinion would ordinarily be

entitled to substantial weight), who opined that for the period

between January 28, 1994 and December 31, 1994:


1.  claimant could stand and walk (with normal
    breaks) for less than 2 hours each day;

2.  claimant could sit (with normal breaks) for
    less than 2 hours each day;

3.  claimant could sit for only 10 minutes before
    having to change his position;

4.  claimant could stand for only 10 minutes
    before having to change his position;

3    In her written findings, the ALJ concluded that, "After
careful assessment of the objective medical evidence, it is
apparent that the claimant's symptomatic complaints are not
consistent with objective physical findings, and as such, it can
reasonably be concluded that the claimant was capable of
performing a range of sedentary work . . . Before proceeding,
however, in making a final assessment of the claimant's residual
functional capacity, I must give consideration to the claimant's
allegations of pain."  Transcript at 26 (emphasis supplied).

It is, however, unclear whether (as claimant points out) the
ALJ has "put the cart before the horse."  See Claimant's motion
(document no. 6) at 12.  The ALJ must assess the credibility of
claimant's subjective complaints of pain (along with the other
factors identified above) before she determines whether he has
the RFC to perform sedentary work.  She should not first conclude
that he has such an RFC and then use that determination as
evidence that his complaints of pain are less than credible.
Stated somewhat differently, a claimant's RFC is not one of the
factors that should be considered when assessing his subjective
complaints of pain under Avery, 20 C.F.R. § 404.1529(c), or SSR
96-7p.

13

5. claimant needed the opportunity to shift at will between sitting and standing/walking; and

6. claimant needed to lie down at unpredictable intervals during a work shift.

Transcript at 553. Among other things, Dr. Piscopo's opinion lends significant credence to claimant's allegations of pain. Nevertheless, aside from acknowledging Dr. Piscopo's opinion (transcript at 25), the ALJ failed to discuss it in any detail or ascribe any weight to it. See 20 C.F.R. § 404.1527(d)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (d)(5) of this section in determining the weight to give the opinion."). See also Transcript at 84-86 (the vocational expert testified that by adding to the ALJ's hypothetical the requirement that claimant be permitted to periodically elevate his leg and/or periodically recline during the day would "compromise the job base" upon which the ALJ relied in concluding that there were significant jobs in the national economy which claimant could perform. The vocational expert also testified that the need to frequently change the water in claimant's cryocuff would eliminate all of employment positions in the national economy.).

While the ALJ's credibility determination is entitled to deference, it must be supported by specific factual findings which are, in turn, supported by the record. Here, however, the

14

ALJ's credibility determination is not adequately grounded in the record insofar as it appears that the ALJ failed to give sufficient consideration to the factors outlined in 20 C.F.R. § 404.1529(c)(3), Avery, and SSR 96-7p; failed to adequately address the December 19, 1995, opinion of plaintiff's treating physician; and may have misconstrued some of the record evidence. Ultimately, the ALJ's written opinion suggests that some of the factors upon which she relied in discounting claimant's complaints of pain were misapplied.

The parties agree that claimant's medical condition is one that can, and in fact does, cause him pain. They disagree with regard to the extent of that pain and whether it is disabling. Plainly, the ALJ concluded that claimant's complaints of pain were exaggerated and did not preclude him from performing sedentary work (with certain limitations). However, for the court to sustain that conclusion, the ALJ must properly document those factors in the record upon which she relied in reaching that conclusion.

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

15

the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.  See also Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.") (citations and internal quotation marks omitted).

After carefully reviewing the record and, in particular, the ALJ's stated bases for her resolution of this matter, the court concludes that her findings are not supported by substantial evidence.  In her written decision, the ALJ did not adequately address the following issues (or perhaps misconstrued evidence that seems particularly relevant): (1) claimant's daily activities;[4] (2) claimant's seemingly unsuccessful attempts to

---

[4]    As to claimant's daily activities, the ALJ appears to have considered only claimant's ability to drive.  She did not, however, discuss the frequency of his driving, the reasons for it (e.g., for routine errands or only under extraordinary circumstances.  See, e.g., Nelson v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989)), or his testimony that he is considering not driving anymore because he believes he has become a potential hazard.  Specifically, claimant recounted situations in which he had mistakenly driven into the wrong driveway, believing that he was actually at home.  Apparently, his confusion was a side effect of his pain medications.  Among other things, the ALJ also failed to adequately address claimant's testimony that his daily routine involves lying down for over four hours each day or his use of the cryocuff each day for 8 to 10 hours (other than to discount his allegation that the water in the cryocuff must be changed

16

obtain some relief from his pain by the use of several different knee braces (including a custom made unit) and steroid injections; (3) claimant's inquiries into the possibility that he undergo total knee replacement surgery or even amputation followed by the use of a prosthesis (options his treating physicians rejected because of claimant's relatively young age and the latter of which claimant described as "an ugly option." Transcript at 31-32); (4) the fact that claimant has undergone seven separate (unsuccessful) surgeries on his left knee which were designed to alleviate his ongoing pain;[5] or (5) Dr. Piscopo's opinion dated December 19, 1995.

The ALJ no doubt considered many of the factors discussed above in reaching her conclusion that claimant was not disabled. However, her written order fails to adequately support that conclusion or discuss those factors with the requisite specificity. Additionally, while the court may be mistaken in this regard, it appears that the ALJ may have misconstrued some of the medical evidence and erroneously concluded that claimant's treating physicians believe that his subjective complaints of pain are inconsistent with his physical condition.

## Conclusion

---

frequently).

5    Claimant had additional surgery performed on his right knee in 1990. Transcript at 124.

The ALJ's conclusion that Mr. Chartier is not disabled within the meaning of the Act is not supported by substantial evidence. Among other things, the ALJ's conclusion that claimant's subjective complaints of disabling pain are less than credible is unsupported because the ALJ failed to adequately address the factors outlined in Avery, supra, 20 C.F.R. § 414.1529(c)(3), and SSR 96-7p.

Cases in which a claimant alleges disabling pain that cannot be precisely corroborated by clinical testing obviously pose a difficult situation for an Administrative Law Judge and this court. The court is mindful that it must defer to the ALJ's conclusion regarding disability, provided that conclusion is supported by substantial record evidence. Nevertheless, in cases such as this, where the record contains a significant amount of evidence which facially supports a claimant's complaints of disabling pain, the ALJ must support any judgment to the contrary with specific references to the relevant factors upon which he or she relied in reaching that conclusion. In the end, this court must have a relatively solid foundation upon which to base its deference to the ALJ's decision. And, while this is, perhaps, a close case, the court is compelled to conclude that the ALJ has not adequately supported her conclusion that claimant is not disabled.

Claimant's motion to reverse the decision of the Commissioner (document no. 6) is granted. The Commissioner's motion to affirm the decision of the Commissioner (document no. 7) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 30, 1998

cc: Elizabeth R. Jones, Esq.
    David L. Broderick, Esq.